IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STORMI FREUND, | ) | CASE NO. 5:09 CV 334 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE GWIN |
| v. | ) | |
| | ) | |
| MICHAEL J.ASTRUE, | ) | MAGISTRATE JUDGE McHARGH |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Stormi Freund's application for Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION and PROCEDURAL HISTORY

On March 22, 2005, Plaintiff filed an application for Period of Disability and Disability Insurance Benefits (Tr. 19, 116).  She filed an application for Supplemental Security Income on March 31, 2005 (Tr. 19, 298).  In both applications, Plaintiff alleged that she became disabled on October 1, 2004 due to fibromyalgia, depression, heart problems, and asthma (Tr. 19, 116, 122,

303).   Plaintiff's date last insured for purposes of her Disability Benefits application was September 20, 2006 (Tr. 106).

Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr. 77, 91, 303, 307).   Plaintiff timely requested and was granted a hearing before an ALJ.   Plaintiff then appeared with counsel and testified at a hearing before Administrative Law Judge Steve Hanekamp (the "ALJ") (Tr. 310-45).   Kevin Yi, a Vocational Expert ("VE") also testified at Plaintiff's hearing (Tr. 311, 333).   On September 2, 2008 the ALJ issued a written decision denying Plaintiff's applications for benefits (Tr. 19-29)   In the written decision, the ALJ applied the familiar five-step sequential evaluation[1] and determined at the fifth step that Plaintiff had the

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)   If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)   If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)   If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)   If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)   Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

residual functional capacity ("RFC") to perform a limited range of sedentary work existing in significant numbers in the national economy and, therefore, was not disabled (Tr. 19-28). Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 4-6, 13-15).  On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

Born on August 29, 1971, Plaintiff was 33 years old on her alleged disability onset date, 37 years old at the time of the ALJ's determination, and was at all times a "younger individual" for purposes of the Social Security regulations (Tr. 27, 29, 116, 298); *see* 20 C.F.R. §§404.1563, 416.963.  Plaintiff has a high school education (Tr. 27). She has past relevant work experience as a cashier, a housekeeper/cleaner, a home health aide, and as a waitress (Tr. 334-35).

## II.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

## III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15,

3

2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

Plaintiff presents a number of arguments in support of her claim that the ALJ's decision is not supported by substantial evidence. The Court addresses each below in a manner that best facilitates its analysis.

**A.** **Whether the ALJ Erred in His Evaluation of the Opinion of Plaintiff's Treating Physician, Dr. Dinsmore**

Plaintiff argues that the ALJ erroneously rejected Dr. Dinsmore's opinion and advances a number of arguments to support this claim. First, Plaintiff argues that although the ALJ rejected

Dr. Dinsmore's opinion, in part, because it was not supported by "objective diagnostic test results," the ALJ failed to indicate what types of objective tests might support or refute Dr. Dinsmore's opinions.  Plaintiff also notes that objective evidence is of questionable relevance because objective tests cannot effectively gauge the severity of chronic fatigue syndrome and fibromyalgia.  Second, Plaintiff argues that Dr. Dinsmore's documentation of extreme tenderness on certain occasions and less severe tenderness on other occasions is fully consistent with Plaintiff's testimony that she has good days and bad days, rather than inconsistent with her complaints, as the ALJ found.  Third, Plaintiff argues that the ALJ improperly "played doctor" by finding that the medical data contained in Dr. Dinsmore's treatment notes did not support Dr. Dinsmore's opinions regarding the severity of Plaintiff's symptoms.

The weighing of medical evidence is the province of the Commissioner.  Where there are conflicting medical opinions resulting from essentially the same objective medical data, it is the responsibility of the ALJ to resolve those conflicts.  *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 803 (6th Cir. 2008). However, the ALJ is bound by the Social Security Regulations when weighing the medical evidence.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004).  The regulations provide that the opinion of a treating physician generally should receive substantial deference, and the opinion should receive complete deference if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 416.927(d)(2); 404.1527(d)(2); *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987).  A treating physician's opinion typically should be afforded greater weight than those of physicians who have examined the claimant on

5

consultation or who have not examined the claimant at all.  *See Meece v. Barnhard*, 192 Fed. Appx. 456, 461 (6th Cir. 2006); *Wilson*, 378 F.3d at 544; *Shelman*, 821 F.2d at 321; *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).  However, an "ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, [and] may reject determinations of such a physician when good reasons are identified for not accepting them."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

This means that if an ALJ rejects a treating physician's opinion, he must articulate clearly "good reasons" for doing so.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  In order to be "good," those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p.  Unless an ALJ's failure to adhere to this procedural requirement amounts to a harmless, *de minimis* procedural violation, the error is cause for remand.  Specifically, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

The ALJ described Dr. Dinsmore's opinion as follows:

The treatment notes from Rex Dinsmore, D.O., show treatment for a less than 12-month period, from May 2007 through March 2008.  On July 2, 2008, Dr. Dinsmore completed a questionnaire at the request of the claimant's attorney.  He checked off that in an 8 hour work day that the claimant could only sit 2 hours,

stand 2 hours, walk 2 hours and work 2 hours (Exhibit 17F).  He checked off that she could occasionally lift and carry up to 20 pounds but that the claimant could not use her hands for repetitive pushing and pulling and fine manipulation (Exhibit 17F).  He checked off that the claimant could occasionally tolerate exposure to unprotected heights[,] being around machinery, and driving automotive equipment.  He checked off a response indicating that he anticipated that the claimant's impairments or treatment would cause the claimant to be absent from work more than 3 times a month (Exhibit 17F)

(Tr. 26).

The ALJ then stated:

The [ALJ] has considered 20 CFR 404.1527 and 20 CFR 416.927 in evaluating the physician's conclusions.  There is a definite conflict between this check-off form completed at the request of the claimant's attorney[] compared to Dr. Dinsmore's actual office treatment notes.  Dr. Dinsmore provided no narrative explanation of the clinical signs and objective diagnostic test results to support the limitations he checked off.  Dr. Dinsmore's treatment notes do not support the degree of limitation he checked off[] either, and neither do his treatment notes support the degree of limitation the claimant alleges.  For example, at times Dr. Dinsmore noted extreme tenderness in certain areas of the body, but at other times, he described only moderate tenderness.  I resolve this conflict by giving greater weight to Dr. Dinsmore's treatment notes, since they were prepared in the course of medical treatment for the actual purpose of medical treatment, and so they are inherently more reliable.  For this same reason, I give more weight to Dr. Dinsmore's treatment notes than to the claimant's testimony

(Tr. 26-27).

Plaintiff's argument with respect to the ALJ's evaluation of Dr. Dinsmore's opinion hinges in part on her diagnoses of fibromyalgia and chronic fatigue syndrome and the special considerations that an ALJ must make in evaluating these impairments.  As the Sixth Circuit has noted, "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."  Rogers, 486 F.3d at 243.  Indeed, fibromyalgia is an "elusive" and "mysterious" disease with no known cause and no known cure.  Id. (citing Sarchet, 78 F.3d at 306).  Fibromyalgia patients typically exhibit normal muscle strength and neurological reactions and have a full range of motion.  The symptoms of fibromyalgia include

severe musculoskeletal pain, stiffness, fatigue, and – in particular – multiple acute tender spots at various fixed locations on the body.  *Wines*, 268 F.Supp.2d at 958 (citing *Sarchet*, 78 F.3d at 306 and *Preston v. Sec. of Health and Hum. Servs.*, 854 F.2d 815, 817 (6th Cir. 1988).  Despite the unique nature of the impairment, however, a mere "*diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 20 Fed.Appx. 801, 2008 WL 162942 (6th Cir. Jan. 15, 2008); *see also* *Sarchet*, 78 F.3d at 307 ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [the claimant] is one of the minority.").

Since neither the presence nor the severity of fibromyalgia can be confirmed by objective testing, the physician's opinion necessarily must depend in large part upon an assessment of the patient's subjective complaints.  *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003).  This places a premium on the ALJ's assessment of the claimant's credibility.  As stated in *Swain*:

> Although the treating physician's assessment can provide substantial input into this credibility determination, ultimately, the ALJ must decide, given the factors set out in the regulations, if the claimant's pain is so severe as to impose limitations rendering her disabled.  For purposes of judicial review, the ALJ's articulation of reasons supporting his credibility findings becomes very important.

297 F.Supp.2d at 990.

Essentially, as Plaintiff notes, the ALJ rejected Dr. Dinsmore's opinion because "Dr. Dinsmore provided no narrative explanation of the clinical signs and objective diagnostic test results to support the limitations he checked off," and "Dr. Dinsmore's treatment notes do not support the degree of limitation he checked off[] . . . [or] the degree of limitation the claimant alleges" (Tr. 26). The Court first addresses the ALJ's explanation regarding Dr. Dinsmore's

failure to provide a narrative explanation of the relevant clinical signs and objective test results. The regulations provide that the more evidence a medical source presents to support his opinion and the better his explanation for his opinion, the more weight that opinion should receive. 20 C.F.R. § 416.927(d)(3).  Yet, for the reasons outlined above, "objective tests are of little relevance in determining the existence or severity of fibromyalgia." *Rogers*, 486 F.3d at 243 (*citing Preston v. Secretary of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1998)). Accordingly, "the medically acceptable clinical and laboratory diagnostic techniques for fibromyalgia are different from those applicable to other impairments."  *Swain*, 297 F.Supp.2d (explaining the court's analysis in *Green-Younger v. Barnhart*, 335 F.3d 99, 106-09 (2d Cir. 2003)).

   Although Dr. Dinsmore consistently noted in his records that Plaintiff has fibromyalgia, his records contain no mention of the various, fixed fibromyalgia trigger points or whether Plaintiff consistently exhibited them.  The treatment notes also are somewhat unclear as to whether Plaintiff's tenderness always manifested itself in the same places on her body.  For instance, a note from May 2008 indicates that Plaintiff had some tenderness in both knee joints and in her midthoracic and cervical paravertebral muscle groups, but various other notes do not mention knee-joint tenderness.  *See e.g.*, tr. 151-52, 279-80.  The Court notes in making these observations that Plaintiff's diagnosis of fibromyalgia is not in dispute, as the ALJ found that this condition numbered among Plaintiff's severe impairments.  However, the lack of explanation in Dr. Dinsmore's notes of the various clinical signs and symptoms to support his conclusion that Plaintiff has fibromyalgia bear to a degree upon the supportability of Dr. Dinsmore's opinion. *See Swain*, 297 F.Supp.2d at 992 (explaining that the American College of

Rheumatology guidelines prescribe that the clinical signs and symptoms of fibromyalgia are "primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points"). The ALJ is also correct to the extent that Dr. Dinsmore's opinion does not contain any narrative explanation for his findings, and the opinion does not mention the impairments that are responsible for the various functional limitations Dr. Dinsmore names (Tr. 295-97). Thus, the Court recognizes that there is some support in the record for the ALJ's explanation that Dr. Dinsmore failed to provide an objective basis for his opinion to the extent that he could have done so, given the unique nature of fibromyalgia.

Moreover, lack of objective support is not the only reason the ALJ gave for discounting Dr. Dinsmore's opinion. The ALJ also stated that "Dr. Dinsmore's treatment notes do not support the degree of limitation he checked off . . . [or] the degree of limitation the claimant alleges." In explaining his reasons for finding that Dr. Dinsmore's opinion was not supported by the treatment notes, the ALJ stated:

> [f]or example, at times Dr. Dinsmore noted extreme tenderness in certain areas of the body, but at other times, he described only moderate tenderness. I resolve this conflict by giving greater weight to Dr. Dinsmore's treatment notes, since they were prepared in the course of medical treatment for the actual purpose of medical treatment, and so they are inherently more reliable.

(Tr. 26-27).

The Court observes that the ALJ's specific phrasing in this passage is somewhat ambiguous. The "conflict" that the ALJ seems to identify here is the fact that Dr. Dinsmore's treatment notes document extreme tenderness on some occasions but only moderate tenderness on other occasions. Thus, the identified "conflict" seems to be an internal feature of the treatment notes. The ALJ also stated in assessing Plaintiff's credibility that Plaintiff's "signs

10

[are] very variable from appointment to appointment.  She sometimes has severe tenderness and limited range of motion, but not always" (Tr. 26).  He further noted that "the diagnostic trigger points for fibromyalgia are not documented and they are not consistently present" (Tr. 26).  These statements also suggest that the conflict the ALJ perceives is in the treatment notes themselves.  Yet, the ALJ resolves this conflict "by giving greater weight to Dr. Dinsmore's treatment notes."

However, the ALJ *stated* that the conflict is between the treatment notes – which document that Plaintiff has extreme tenderness on some occasions and moderate tenderness on others – and Dr. Dinsmore's *opinion* – which indicates that Plaintiff can only sit, stand, walk, and work 2 hours per day and would miss work more than three times per month as a result of her symptoms.  Defendant argues that the record strongly supports this reasoning, since "in 2007 Dr. Dinsmore noted that [Plaintiff] was 'currently functioning well,' and in 2008 Dr. Dinsmore's records document [Plaintiff]'s declaration that she stood and walked for 8-to-10 hours a day" (Tr. 271, 273).   Defendant's characterization of Dr. Dinsmore's statement that Plaintiff is "currently functioning well" is somewhat incomplete.  Dr. Dinsmore in fact stated that Plaintiff "is currently functioning well *with the use of Adderall XR 30 mg one daily*."  Other of Dr. Dinsmore's notes indicate that Plaintiff has adult ADD and contain similar statements regarding the effectiveness of Adderall.  *See e.g.*, tr. 152, 271.  These statements, viewed in context, suggest that Plaintiff has been responding well to the treatment for her ADD, not necessarily that Plaintiff has been functioning well in general.  However, they do reflect Dr. Dinsmore's assessment that at least one of Plaintiff's impairments is well-controlled.  Moreover, Dr. Dinsmore's notation that Plaintiff has been standing and walking 8 to10 hours per day does

11

conflict with his opinion that Plaintiff can stand only 2 hours per day and walk 2 hours per day. The treatment note in which this notation appears does not indicate whether Plaintiff has been standing and walking 8 to 10 hours per day on a daily basis or only sporadically, although the unqualified use of the phrase, "per day," may suggest that Plaintiff had been doing these activities on a sustained basis. *See* tr. 271.

Of course, the ALJ also stated that he rejected Dr. Dinsmore's opinion on the basis that Plaintiff's allegations regarding her symptoms are not documented in the treatment notes. Specifically, the ALJ stated:

> [s]he is fairly active.  She testified that she has good days 2-3 times per week, and on bad days she spends virtually all her time in bed.  I find that the treatment notes do not document these allegations.  I give greater weight to the treatment notes than to her testimony.

(Tr. 25).  The ALJ later stated that:

> I find the signs very variable from appointment to appointment.  She sometimes has severe tenderness and a limited range of motion, but not always.  The diagnostic trigger points for fibromyalgia are not documented and they are not consistently present (Exhibit 14F, page 9).  She was tearful throughout the hearing and she testified about good days and bad days.  I find that the degree of symptoms alleged is not documented in the treatment notes

(Tr. 26).  Plaintiff argues that Dr. Dinsmore's documentation of extreme tenderness on certain occasions and less severe tenderness on other occasions is fully consistent with Plaintiff's testimony that she has good days and bad days and that her pain level on bad days is so extreme that it is difficult for her to get out of bed.  In response, Defendant points out that the treatment notes in fact do not indicate that Plaintiff had good days and bad days or that Plaintiff's ability to engage in activities – such as standing and walking 8-10 hours per day – is restricted to good days.  Defendant is correct that the treatment notes do not specifically document these

allegations.  Indeed, the treatment notes are relatively brief and perfunctory; they only minimally touch upon Plaintiff's symptoms and complaints of pain, and they do not address functional limitations.  *See* tr. 150-52, 279-80. Additionally, as noted above, the ALJ is correct that the trigger points for fibromyalgia are not specifically labeled or documented anywhere in the record – including in Dr. Dinsmore's notes, which indicate that Plaintiff has experienced pain variously throughout her body but do not indicate whether Plaintiff's tenderness is located in the typical fibromyalgia trigger points.  Yet, many of the records reflect that Plaintiff has had fibromyalgia for many years – which may explain the lack of concrete evidence on this point – and the ALJ in fact found that Plaintiff's fibromyalgia constituted a severe impairment – thus calling into question the relevance of whether or not trigger points are present, as the question is not whether Plaintiff has fibromyalgia, but rather how severely her impairments impact her ability to perform job-related tasks.  Nevertheless, as the ALJ notes, one medical source apparently could not identify a definite trigger point (tr. 278), and Dr. Dinsmore's treatment notes are somewhat unclear as to whether Plaintiff's tenderness always manifested itself in the same places on her body.  While the Court notes that a diagnosis of fibromyalgia presents special analytical difficulties in the context of judicial review, it does not do away with the ALJ's duty to evaluate the consistency of the medical evidence.  The Court finds that this evidence – or rather, that the lack of evidence in the treatment notes to support Dr. Dinsmore's opinion – provides substantial support for the ALJ's finding.

Furthermore, and as explained more thoroughly below, the ALJ gave several other good reasons for discrediting Plaintiff's testimony.  An ALJ's assessment of a claimant's credibility and the reasons for his findings take on "paramount importance in a fibromyalgia case because

13

the symptoms of that impairment are entirely subjective," and the physician's opinion necessarily must depend in large part upon an assessment of the patient's subjective complaints. *Wines*, 268 F.Supp.2d at 958, 960. In light of the foregoing, as well as the ALJ's thorough credibility analysis, the Court finds that the ALJ complied adequately with the regulations in his treatment of Dr. Dinsmore's opinion.

Defendant also argues that the ALJ's decision to reject Dr. Dinsmore's opinion finds support in the observations and opinions of examining physician Dr. Pellegrino, as well as those of reviewing physicians Dr. Cho and Dr. McCloud. Defendant notes in support of this proposition that Dr. Pellegrino "forthrightly rejected Plaintiff's request for a disability letter[] and recommended instead that she focus on improving her abilities and returning to work," and that Drs. Cho and McCloud found Plaintiff to be capable exertionally of medium work (Doc. 14, at 7). While this medical evidence does provide additional support for the ALJ's decision to discount Dr. Dinsmore's opinion, the more relevant inquiry is not whether the record contains good reasons for rejecting the treating source's opinion, but whether the ALJ in fact gave good reasons for doing so. In this case, the ALJ complied adequately with the procedural requirement.

Plaintiff also claims that the ALJ improperly "played doctor" in attempting to draw medical conclusions about the severity of Plaintiff's impairment from Dr. Dinsmore's treatment notes, and that the ALJ erred by failing to call a medical expert to testify about this issue at the hearing. An ALJ should consider, among other factors, the supportability and consistency of the physician's conclusions in determining how much weight to give to a treating physician's opinion. Furthermore, an ALJ's use of a medical expert is not mandatory unless the evaluation

and interpretation of background medical test data is required or unless the use of an ME is ordered by the Appeals Council or a court.  *See* HALLEX 1-2-534.  In this case, the ALJ rejected Dr. Dinsmore's conclusions based on his assessment that the treatment notes did not support them or Plaintiff's alleged symptoms, and because Dr. Dinsmore failed to provide objective data to support his conclusions.  For the reasons explained above, the ALJ's reasons for discounting Dr. Dinsmore's opinion are well-supported by the record.  This case does not present a situation in which the ALJ was in a position of having to interpret "raw medical data;" rather, the ALJ based his assessment on the consistency and supportability of the evidence, including Plaintiff's statements and the degree to which those statements were supported by and consistent throughout the record.  The ALJ need not have relied on the testimony of an ME in making this determination.

For the reasons set forth above, the Court finds that the ALJ did not err in his evaluation of Dr. Dinsmore's opinion.

**B.     Whether the ALJ Improperly Assessed Plaintiff's Credibility**

Plaintiff argues that the ALJ erroneously discounted Plaintiff's credibility on the basis that Plaintiff complained of extreme tenderness on some occasions but only moderate tenderness on other occasions, and because the severe pain Plaintiff claims she experiences on bad days "is not documented in the treatment notes."  Defendant argues that substantial evidence supports the ALJ's credibility assessment, which included a thorough discussion of Plaintiff's sporadic treatment history, Plaintiff's activities, the opinions of the examining and non-examining physicians, and the lack of documentation in the treatment notes regarding Plaintiff's allegedly severe symptoms.

15

The ALJ need not fully credit a subjective complaint where there is no underlying medical basis. *Hare v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 773, 775 (6th Cir. 2002) (citing *Fraley v. Secretary of Health & Human Servs.*, 733 F.2d 437, 440 (6th Cir. 1984)). However, because objective medical evidence may not always reflect the severity of limitations caused by pain, an ALJ must consider a claimant's statements about her pain and reach a conclusion about the credibility of those statements. *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954,960 (N.D. Ohio 2003). In most disability benefits cases, for the ALJ to find disabling pain, there must be: (1) objective evidence of an underlying medical condition; and (2) either (a) objective medical evidence *confirming* the severity of the alleged pain arising from that medical condition, or (b) the objectively determined medical condition must be of a severity which can *reasonably be expected* to give rise to the alleged pain. *See Buxton v. Halter* 246 F.3d 762, 773 (6th Cir. 2001); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986). The *Duncan* test, however, is not the end of the analysis. The Commissioner must consider other factors that may or may not corroborate Plaintiff's allegations of pain. *See Walters v. Comm'r of Soc. Sec.*, 127 F. 3d 525,531 (6th Cir. 1997); *Felisky v. Bowen*, 35 F.3d at 1039; 20 C.F.R. § 416.929(c)(2). The other factors may include: statements from the claimant and the claimant's treating and examining physicians; diagnosis; efforts to work; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky*, 35 F.3d at 1039-40; 20 C.F.R. § 416.929(a), (c)(3).

An ALJ's assessment of a claimant's credibility and the reasons for his findings take on "paramount importance in a fibromyalgia case because the symptoms of that impairment are entirely subjective." *Wines*, 268 F.Supp.2d at 958.  As the Sixth Circuit has stated:

> blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.  And given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important

*Rogers*, 486 F.3d at 248.

The ALJ in this case stated that

> [a]fter considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual capacity assessment for the reasons explained below"

(Tr. 23).

This statement reflects that the ALJ found that Plaintiff had met the first prong of the *Duncan* test but not the second prong.  In explaining the reasons for his finding, the ALJ stated that Plaintiff "has sought relatively little treatment for her pain complaints, with only two episodes of physical therapy.  She reported improvement but discontinued physical therapy because she was too busy with family obligations" (Tr. 26).  The ALJ also noted that Plaintiff had appointments with her family doctor only sporadically from 2002 to 2008, and he determined that "the gaps in treatment suggest that her symptoms have not been as persistent and constant as she has alleged" (Tr. 26).  He further noted that Plaintiff has no psychologist, psychiatrist or therapist.  As set forth above, the ALJ also explained that the treatment notes do

not support the degree of severity Plaintiff alleges.   The ALJ then discussed the medications
Plaintiff takes for her symptoms and Plaintiff's reports regarding the effectiveness and side
effects of some of these medications.   He also noted Plaintiff's testimony regarding the types of
activities that Plaintiff is able to do on good days.   He found that Plaintiff "is still fairly active,"
and that

> [i]n view of the claimant's testimony, the clinical findings, and taking into
> consideration Social Security Ruling 96-7p, the preponderance of the evidence
> shows that allegations of pain and limitations which would preclude the
> performance of any substantial gainful work activity are not supported by the
> medical and other evidence.

The Court finds that the ALJ's credibility assessment complies with the appropriate
regulatory framework, and that the ALJ's reasons for discrediting Plaintiff's testimony are
supported by the evidence.   The ALJ discussed many, if not all, of the factors set forth in *Felisky*
and SSR 96-7p, including Plaintiff's activities, the medications Plaintiff takes for her symptoms,
as well as the effectiveness and side effects of those medications, and the treatment that Plaintiff
has undergone for her symptoms. The record reflects that Plaintiff has started – and stopped –
physical therapy programs on at least two separate occasions.   As the ALJ noted, Plaintiff was
discharged from one program secondary to her busy schedule (Tr. 258).   The other physical
therapy program ended after Plaintiff failed to call the provider for over 30 days.   Records from
this provider indicate that Plaintiff called and stated that she felt better and wanted to attend
therapy as needed for 30 days due to financial hardship (Tr. 219).   SSR 96-7p instructs that an
ALJ must consider a claimant's reasons for failing to pursue regular treatment, including a
claimant's inability to afford treatment.   However, financial hardship alone does not explain why
Plaintiff failed to contact the provider within the relevant time-frame; it also does not explain

away Plaintiff's discharge from physical therapy due to her busy schedule and resulting difficulty in attending appointments.  Similarly, the ALJ found that Plaintiff's gaps in treatment undercut her allegations regarding the severity of her symptoms.  As Defendant notes, the record reflects that Plaintiff apparently did not seek any treatment between June 2005 and June 2007. For the reasons stated above, the ALJ's determination that Plaintiff's statements are inconsistent with the treatment notes also is not refuted by the evidence.  Overall, the ALJ's credibility assessment reflects that he considered the entire record, not merely the evidence most favorable to Defendant, and that his reasons for discrediting Plaintiff are consistent with the evidence. Based on the above, the Court finds that the ALJ did not err in his credibility assessment.

**C.**    **Whether the ALJ Erred by Relying on VE Testimony in Response to a Hypothetical That is Not Supported by Substantial Evidence.**

Plaintiff argues that the ALJ erred by failing to include in his RFC assessment a limitation that Plaintiff would miss work more than three days per month – as set forth in Dr. Dinsmore's opinion – as a result of her disabling symptoms.  Plaintiff also argues that the ALJ failed to consider the impact of increased activity, in which Plaintiff inevitably would be engaging if working full-time, when formulating Plaintiff's RFC.  Dr. Pellegrino's notes document that increased activity exacerbates Plaintiff's symptoms.  Plaintiff further argues that since the hypothetical to the VE did not include any of these limitations, the ALJ's reliance on the VE's testimony in response is not supported by substantial evidence.

As set forth above, a treating physician's opinion is entitled to controlling weight only if it is "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 416.927(d)(2); 404.1527(d)(2); *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987).  For the

reasons explained above, the Court finds that the ALJ complied adequately with the regulations and case law in determining that Dr. Dinsmore's opinion and Plaintiff's statements – including those portions regarding how often Plaintiff would miss work or be incapacitated by her symptoms – were not supported by the treatment notes or the weight of the evidence.  Thus, Plaintiff's argument that the ALJ should have adopted Dr. Dinsmore's opinion that Plaintiff would miss work three or more days per month, as well as her testimony to that effect, is without merit.

Plaintiff also argues that the ALJ erred by failing to take into consideration Dr. Pellegrino's reports that increased activity exacerbates Plaintiff's symptoms.  However, the ALJ specifically discussed Dr. Pellegrino's statement that cold weather, increased activity and increased use of her right arm aggravated Plaintiff's symptoms and that changing positions helped her symptoms (Tr. 23).  This portion of Dr. Pellegrino's report appears to be little more than a recording of Plaintiff's symptoms as she described them to him; it does not seem to reflect any independent determination on the part of Dr. Pellegrino or any opinion regarding the functional limitations that might be associated with these symptoms.  *See* tr. 225.  Furthermore, the RFC limits Plaintiff to work requiring lifting and carrying up to 10 pounds occasionally; sitting and standing for 2 hours at a time; walking one block at a time; and only simple routine, routine tasks with superficial interactions with co-workers, supervisors, and the general public (Tr. 22). Plaintiff does not explain how this RFC assessment should change in order to account for the alleged fact that increased activity exacerbates her symptoms.  To the extent that Plaintiff's argument here is that she effectively is unable to perform full-time work because increased activity exacerbates her symptoms, that argument is not supported by the evidence

20

Plaintiff cites.  In fact, Dr. Pellegrino specifically noted in his assessment that he did not think Plaintiff was a good candidate for disability benefits (Tr. 226).  While this statement standing alone may not be entitled to any special weight – *see Walker v. Sec. of Health and Hum. Servs.,* *980 F.2d 1066, 1070 (6th Cir. 1992)* ("[T]he ultimate decision of disability rests with the [ALJ].") – it also does not provide any support for Plaintiff's argument that Dr. Pellegrino's notes support her claim with respect to this issue.

Plaintiff does not present any other arguments as to why the RFC assessment is not supported by substantial evidence.  Accordingly, Plaintiff's argument that the ALJ erred by relying on VE testimony in response to a hypothetical that is substantially similar to the RFC assessment is without merit.

## V.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be AFFIRMED.

> s/ Kenneth S. McHargh
> Kenneth S. McHargh
> United States Magistrate Judge

Date: March 5, 2010.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.