UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------
                                          :
STORMI FREUND,                            :
                                          :        CASE NO. 5:09-CV-334
                    Plaintiff,            :
                                          :
        v.                                :        OPINION & ORDER
                                          :        [Resolving Doc. Nos. 1, 16]
MICHAEL ASTRUE,                           :
*Commissioner of Social Security*,        :
                                          :
                    Respondent.           :
                                          :
-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        On February 12, 2009, Plaintiff Stormi Freund filed a Complaint in this Court, challenging

the Commissioner of Social Security's denial of her application for benefits. [Doc. 1.]  On March

5, 2010, Magistrate Judge Kenneth McHargh recommended that this Court affirm the

Commissioner's decision. [Doc. 16.] Plaintiff Freund objects to the Magistrate Judge's Report and

Recommendation. [Doc. 17.]  For the following reasons, the Court **DECLINES TO ADOPT** the

Magistrate Judge's Report and Recommendation, **VACATES** the Administrative Law Judge's

decision, and **REMANDS** to the ALJ for additional proceedings.

## I.  Background

        Plaintiff Freund applied for Period of Disability and Disability Insurance Benefits on March

22, 2005, and for Supplemental Social Security Income on March 31, 2005. [R. 116.] The Plaintiff

claimed that she became disabled on October 1, 2004, due to fibromyalgia, depression, heart

problems, and asthma. [R. 122]  Previously, Freund had worked as a cashier, housekeeper, home

-1-

Case No. 5:09-CV-334
Gwin, J.

health aide, and waitress. [R. 334-35.]

Dr. Richard Gunning treated Freund between May 2002 and May 2005 and diagnosed fibromyalgia, asthma, and depression during that period. [R. 214-16.] Dr. Mark Pellegrino examined Freund on May 25, 2005, and found that her "history and exam today are indeed consistent with fibromyaliga syndrome." [R. 226.]  Dr. Pellegrino also noted that "[Freund] was asking about disability, and I told her I didn't think she was a candidate fore this, and I recommended she focus on improving her abilities and returning to work." [*Id.*]

Dr. Pellegrino referred Freund to a physical therapist, and Freund attended five treatment sessions. [R. 219.] In June 2005, however, Freund contacted the physical therapist and informed her that she was feeling better and wanted to attend therapy "as needed for 30 days due to financial hardship." [R. 219.]  Freund underwent a separate course of physical therapy from July 2007 to December 2007, but the rehabilitation center discharged her because her "busy schedule" made it difficult for her to keep appointments. [R. 258.]

In May 2007, Dr. Rex Dinsmore began treating Freund, noting "extreme tenderness" in two muscle groups. [R. 280.] Dr. Dinsmore made this same observation in June 2007. [R. 279.]  After making no pain notation in July 2007, [R.276], Dr. Dinsmore observed "moderate tenderness" in the same muscle groups in October and November 2007. [R. 272-73.]

In January 2008, however, Dr. Dinsmore wrote that the patient "state[s] that she is standing and walking for 8-10 hours per day." [R. 271.]  Dr. Dinsmore made no pain notations at this visit. In contrast, at a March 2008 follow-up visit, Dr. Dinsmore recorded "extreme tenderness . . . over the right lumbar paravertebral muscles extending into the right SI joint," as well as "bilateral tenderness and pain . . . in the ankles." [R. 270.]

-2-

Case No. 5:09-CV-334
Gwin, J.

In July 2008, Dr. Dinsmore completed a Residual Functional Capacity Questionnaire. [R. 295-97.] On the questionnaire, Dr. Dinsmore concluded that Freund could sit, stand, walk, and work for only two hours each in an eight hour work day. [R. 295.] Moreover, Dr. Dinsmore checked off that Freund would likely miss work more than three times a month. [R. 297.]

Ultimately, the Social Security Administration denied Freund's application for benefits [R. 77, 91.]  At a subsequent hearing before Administrative Law Judge Stephen Hanekamp, both Plaintiff Freund and vocational expert Kevin Yi testified as to Freund's condition and ability to work. [R. 310]  On September 2, 2008, the ALJ issued a written decision, concluding that the Plaintiff had the residual functional capacity to perform a limited range of sedentary work existing in significant numbers in the national economy. [R. 19-29.]  Accordingly, the ALJ denied the Plaintiff's application for benefits. [*Id.*]  The Appeals Council denied the Plaintiff's request for review. [R. 4.]

On February 12, 2009, Plaintiff Freund filed a Complaint in this Court, seeking review of the ALJ's determinations. [Doc. 1.]  After receiving briefing on the issues, the Magistrate Judge recommended that this Court affirm the Commissioner's decision. [Doc. 16.]  Plaintiff Freund objected to the Magistrate Judge's recommended ruling on her ability to sustain work. [Doc. 17.]

## II.  Legal Standard

The Court reviews de novo any portion of the Report and Recommendation to which the Plaintiff has objected. Fed. R. Civ. Pro. 72(b)(3). The Court reviews all other portions of the R&R for clear error. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *see also Ridge v. Barnhart*, 232 F. Supp. 2d 775, 779 (N.D. Ohio 2002).

This Court reviews the Commissioner's benefit determination only to determine whether the

Case No. 5:09-CV-334
Gwin, J.

Commissioner's decision is supported by substantial evidence and whether the Commissioner

employed the proper legal standards. *Howard v. Comm'r of Social Sec.*, 276 F.3d 235, 237-38 (6th

Cir. 2002); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III.  Analysis

With her objection, Plaintiff Freund argues that neither the ALJ nor the Magistrate Judge

discussed or analyzed whether Freund could sustain full-time employment. [Doc. 17.]  According

to the Plaintiff, because some evidence exists suggesting that she would miss work at least several

days every month and the vocational expert testified that an employer could not tolerate more than

two absences per month, the Court must remand for a determination as to how much work the

Plaintiff would miss. [R. 339.] Because Freund's objection necessarily depends on whether the ALJ

appropriately considered treating physician Dr. Dinsmore's opinion, the Court analyzes the ALJ's

treatment of that opinion below.

In support of her claim for disability benefits, Plaintiff Freund presented a Residual

Functional Capacity Questionnaire completed on July 9, 2008, by her treating physician Dr.

Dinsmore. [R. 295-97.] On the questionnaire, Dr. Dinsmore concluded that Freund could sit, stand,

walk, and work for only two hours each in an eight hour work day. [R. 295.]  Moreover, Dr.

Dinsmore said that Freund would likely miss work more than three times a month. [R. 297.]

The ALJ reviewed Dr. Dinsmore's opinion as well as his treatment notes, found that the two

conflicted, and accordingly gave "greater weight to Dr. Dinsmore's treatment notes, since they were

prepared in the course of medical treatment for the actual purpose of medical treatment . . .." [R. 26.]

-4-

Case No. 5:09-CV-334
Gwin, J.

An ALJ must generally give substantial weight to the opinion of a treating physician. *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987).  Moreover, the ALJ must provide "good reasons" for the weight ultimately given that opinion. *Id.* at 321.  If the ALJ does not give the treating physician's opinion controlling weight, he must consider specific factors in determining the appropriate weight to give. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (noting that factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source") (citing 20 C.F.R. § 404.1527(d)(2) (2004)).  This explanation must make clear "not just why these opinions do not warrant controlling weight, but should also explain what weight was given the treating opinions." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 246 (6th Cir. 2007).

As the Sixth Circuit has repeatedly cautioned, courts "will not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion, and . . . will continue remanding when encounter[ing] opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545).

In this case, the Court finds that the ALJ inadequately explained why he disregarded Dr. Dinsmore's opinion and further provided no explanation as to what weight he ultimately gave that opinion. This procedural error itself constitutes a lack of substantial evidence. *Rogers*, 485 F.3d at 243.  Moreover, the treatment notes do not seem to contradict Dr. Dinsmore's conclusions as clearly as the ALJ represented, undercutting any explanation the ALJ did provide.

As to question of weight, the ALJ stated he would give "greater weight" to the treatment

Case No. 5:09-CV-334
Gwin, J.

notes because they "were prepared in the course of medical treatment for the actual purpose of medical treatment, and so they are inherently more reliable." [R. 26-27.] This factor alone, however, insufficiently supports disregarding Dr. Dinsmore's opinion.  Moreover, without greater explanation as to what weight the ALJ gave the opinion, this Court cannot determine whether the ALJ identified adequate reasons to support the weight ultimately given.

Although the ALJ identified other factors calling into question Dr. Dinsmore's opinion, such as the length of treatment and lack of a detailed diagnostic opinion, these factors do not correspondingly bolster the credibility of the treatment notes, as the ALJ seems to suggest.  If anything, the ALJ provided some reasons for discrediting the entirety of Dr. Drinsmore's opinion and treatment notes.  The ALJ, however, apparently gave credence to the treatment notes and rejected the opinion only on the grounds that the notes were likely more accurate.  Under *Rogers*, this conclusory reasoning is inadequate.

In addition, the ALJ's opinion does not explain or support the ALJ's implicit conclusion that Plaintiff Freund would not miss more than two days of work per month because of her fibromyalgia. Both Dr. Dinsmore's opinion and Freund's testimony indicated that even though Freund had "good days," those good days were not consistent enough to permit sustained work.  In rejecting this evidence, the ALJ identified no contradictory evidence in the record.  Instead, he merely opined that "the treatment notes do not document these allegations," and "The degree of symptoms alleged is not documented in the treatment notes." [R. 25-26.]

Although the absence of such documentation might support the ALJ's decision in some cases—for example, where a disease could be expected to cause objectively quantifiable pain, that absence may not be so remarkable when the patient suffers from fibromyalgia.  As the Sixth Circuit

Case No. 5:09-CV-334
Gwin, J.

has noted, "fibromyalgia can be a severe impairment," that nevertheless " present[s] no objectively alarming signs." *Rogers* 486 F.3d at 243 (finding inadequate ALJ's explanation, without more, that "the record does not support the limitations of the severity suggested by [the treating physician]"). Here, the ALJ seemed troubled by the lack of any "narrative explanation of the clinical signs and objective diagnostic test results." [R. 26.]  Given the nature of fibromyalgia, however, the ALJ should have specifically explained why the absence of such test results and absence of documentation of Freund's allegations in Dr. Dinsmore's treatment notes specifically undermines the conclusion that the Plaintiff cannot sustain full-time work.

In sum, although the ALJ stated that he was giving "greater weight" to Dr. Dinsmore's treatment notes, he did not indicate the level of weight he gave Dr. Dinsmore's opinion.  In addition, the ALJ's explanation for disregarding Dr. Dinsmore's opinion is too limited, especially in light of the fact that the treatment notes do not explicitly contradict all of Dr. Dinsmore's conclusions. Given these inadequacies, the Court remands to the ALJ for a fuller explanation of his reasoning and additional proceedings as necessary to reach a full and procedurally-adequate conclusion.

## IV. Conclusion

For the foregoing reasons, the Court **DECLINES TO ADOPT** the Magistrate Judge's Report and Recommendation, **VACATES** the ALJ's decision, and **REMANDS** to the ALJ for additional proceedings.

IT IS SO ORDERED.

Dated: March 30, 2010                              s/        *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE